

November 5, 2007

5-07-006684 - JW

Clerk, U..S. District Court
Northern District of California
450 Golden Gate Ave.
P.O. Box 36060
San Francisco, CA  94102-3489

    RE: United States of America  vs  Amy Browne
       Cr. No. 06-185-02

Dear Clerk:

   Pursuant to Transfer of Jurisdiction of Probation, we herewith enclose a certified copy of the following;

     Indictment
     Judgment
     Docket Sheet

  Kindly acknowledge receipt on the copy of the letter provided.

       Very truly yours,

       MICHAEL E. KUNZ
       Clerk of Court

       By:
       James Hamilton, Deputy Clerk

c:

Received above material or record file this  day of  ,

       Signature: _____

       Date: _____

crf7

| PROB 22 (Rev. 2/88) | **TRANSFER OF JURISDICTION** | CASE NUMBERS *(Tran. Court)* 2:06CR00185-002 |
|---|---|---|
| | | CASE NUMBER *(Rec. Court)* **0971/5:07CR00684 JW** |

| NAME AND ADDRESS OF SUPERVISED RELEASEE: Amy Browne 1035-B Rucker Avenue Gilroy, California 95020 | DISTRICT Eastern District of Pennsylvania | DIVISION Probation |
|---|---|---|
| | NAME OF SENTENCING JUDGE The Honorable Anita B. Brody | |
| | DATES OF SUPERVISED RELEASE: | FROM July 18, 2007 / TO July17, 2010 |

**OFFENSE**
Title 18 U.S.C. § 371 Conspiracy to defraud the United States (Count One).

**PART 1 - ORDER TRANSFERRING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE **Eastern District of Pennsylvania.**

IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer named above be transferred with the records of the Court to the United States District Court for the **Northern District of California** upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

9/12/07
*Date*

*United States District Judge*

*This sentence may be deleted in the discretion of the transferring Court.

**PART 2 - ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE **Northern District of California.**

    IT IS HEREBY ORDERED that jurisdiction over the above-named probationer be accepted and assumed by this Court from and after the entry of this order.

OCT 2 2 2007
*Effective Date*

*United States District Judge*

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

**EASTERN**    District of    **PENNSYLVANIA**

UNITED STATES OF AMERICA

V.

**AMY BROWNE**

**JUDGMENT IN A CRIMINAL CASE**

FILED

JUL 18 2007

MICHAEL E. KUNZ, Clerk
Dep. Clerk
By_____

Case Number:    **2:06cr00185-002**

USM Number:    **62067-066**

**Luis Ortiz, Esq.**
Defendant's Attorney

## THE DEFENDANT:

X  pleaded guilty to count(s)    **one of the indictment.**

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:371 | Conspiracy to defraud the United States. | 07-31-2002 | 1 |

The defendant is sentenced as provided in pages 2 through ___4___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**07-18-2007**
Date of Imposition of Judgment

Signature of Judge

**Hon. Anita B. Brody, U.S.D.C.E.D.Pa. J.**
Name and Title of Judge

**07-18-2007**
Date

TRUE COPY CERTIFIED TO FROM THE RECORD
DATED :    11-5-07
ATTEST:_____
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
            Sheet 4—Probation

Judgment—Page __2__ of __4__

DEFENDANT:        AMY BROWNE
CASE NUMBER:      2:06cr00185-002

# PROBATION

The defendant is hereby sentenced to probation for a term of :
**3 years on count one of the indictment.  Supervision of the defendant's probation is transferred to the Northern District of California.**

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☐  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☐  The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of probation that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___3___ of ___4___

DEFENDANT:    **AMY BROWNE**
CASE NUMBER:    **2:06cr00185-002**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |
| **TOTALS** | $                0 | $                0 |  |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __4__ of __4__

DEFENDANT:         **AMY BROWNE**
CASE NUMBER:       **2:06cr00185-002**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**    ☐    Lump sum payment of $ _____ due immediately, balance due

        ☐    not later than _____ , or
        ☐    in accordance    ☐ C,    ☐ D,    ☐ E, or    ☐ F below; or

**B**    **X**    Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

**C**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

**E**    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    ☐    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.



# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06 - 185 |
| v. | : | DATE FILED: _____ |
| AKBAR NOURI | : | VIOLATIONS: |
| AMY BROWNE | : | 18 U.S.C. § 371 (conspiracy - 1 count) |
| | : | 50 U.S.C. § 1705(b) (willfully exporting and attempting to export goods to Iran without a license - 2 counts) |
| | : | 18 U.S.C. § 1956(a)(2)(A) (international money laundering - 1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |

**FILED**

APR 1 8 2006

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## INDICTMENT

## COUNT ONE

### THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

1.    Defendant AKBAR NOURI was an Iranian national living in Switzerland.

2.    Defendant AMY BROWNE was a United States citizen living in California.

3.    Defendants AKBAR NOURI and AMY BROWNE knew each other and were engaged in or attempted to engage in the trading of goods, including the transhipment of goods from the United States to Iran by shipping the goods to a third country with knowledge that such goods were intended to be sent to Iran from that third country.

4.    A person known to the defendants as Liam Connelly was in reality a federal law enforcement officer working in an undercover capacity ("the undercover agent").

A TRUE COPY CERTIFIED TO FROM THE RECORD
DATED: _____ 11-5-07
ATTEST: _____
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

1



## The Embargo

5.      The Office of Foreign Assets Control ("OFAC") of the United States Treasury

Department administered economic embargoes and sanctions programs against certain foreign

countries, governments, and groups to advance United States foreign policy and national security

objectives.

6.      In performing this function, OFAC relied in part on the broad authority granted to

the President under the International Emergency Economic Powers Act ("IEEPA"), Title 50,

United States Code, Sections 1701-1705.

7.      IEEPA granted the President broad powers to deal with extraordinary and unusual

threats to the national security, foreign policy, or economy of the United States.  In 1995, then-

President Clinton invoked the authority of the IEEPA and issued a series of Executive Orders

relating to trade with Iran.  On August 19, 1997, President Clinton signed Executive Order

13059, which made clear that any export, whether direct or indirect, to Iran, and any re-

exportation or transshipment to Iran was prohibited.

8.      To implement the Executive Orders, OFAC promulgated the Iranian Transaction

Regulations, 31 C.F.R. Part 560 (the ITAR).  Part 560.204 of the ITAR, as originally issued on

September 11, 1995, prohibited "the exportation from the United States to Iran or the

Government of Iran, or the financing of such exportation, of any goods, technology, or services,"

unless otherwise authorized.  That section was amended on April 26, 1999 to make clear that,

unless otherwise authorized, the prohibitions applied to exports, whether direct or indirect, re-

exports and transshipments to Iran.  See 31 C.F.R. Part 560.204(a).

9.      On July 27, 1999 and November 1, 1999, the ITAR was amended, through 31



C.F.R. Part 560.530, to allow for the exportation of agriculture commodities and medicine to Iran

with prior authorization of OFAC, in the form of a license. Bursa CE vaccine is a vaccine to

prevent disease in chickens, and is considered a medicine for the purpose of 31 C.F.R. Part

560.530.

10.     Since those 1999 amendments, OFAC has issued licenses to permit legitimate

persons and entities to export vaccine to Iran, but only after an appropriate inquiry.

### THE CONSPIRACY

11.     From in or about March 1999 through in or about July 2002, in the Eastern

District of Pennsylvania, and elsewhere, defendants

### AKBAR NOURI and
### AMY BROWNE

conspired and agreed, together and with others known and unknown to the grand jury, to commit

an offense against the United States, that is, to willfully export, sell and supply goods to a person

in a third country with knowledge and reason to know that such goods were intended specifically

for supply, transshipment and reexportation, directly and indirectly, to Iran and the Government

of Iran, all without the required license from OFAC, in violation of Title 50, United States Code,

Section 1705(b), 31 C.F.R. Parts 560.204(a) and 560.530.

### MANNER AND MEANS

It was part of the conspiracy that:

12.     Defendants AKBAR NOURI and AMY BROWNE communicated by telephone,

email, facsimile and in person with each other and with the undercover agent.

13.     In order to conduct their illegal activities defendants AKBAR NOURI and AMY

3



BROWNE, along with the undercover agent, set up a company called Eurovac to conduct their illegal activities.

14.    Defendants AKBAR NOURI and AMY BROWNE attempted to avoid detection of their illegal shipments to Iran by avoiding reference to "Iran" in their telephone calls and taking efforts to disguise the fact that the shipments from the United States were intended for Iran.

### OVERT ACTS

In furtherance of the conspiracy, defendants AKBAR NOURI and AMY BROWNE, and others known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.    On or about March 8, 1999, at the direction of defendant AKBAR NOURI, defendant AMY BROWNE called the undercover agent to inquire about obtaining Bursa CE vaccine for export to Iran.

2.    About a year later, on or about April 8, 2000, again at the direction of defendant AKBAR NOURI, defendant AMY BROWNE called the undercover agent to again inquire about obtaining the vaccine for export.

3.    On or about July 14, 2000, defendant AKBAR NOURI called the undercover agent himself and solicited the undercover agent's assistance with exporting U.S. goods into Iran. The undercover agent told NOURI that there are legal prohibitions on sending U.S. goods into Iran. Defendant NOURI acknowledged the prohibitions but said that "we can buy for either Switzerland or Emirates," referring to his desire to transship the U.S. goods through either Switzerland or the United Arab Emirates in order to avoid detection. Defendant NOURI

4



suggested that he and the undercover agent should meet soon to discuss their potential business together.

4.      On or about September 6 and 7, 2000, defendants AKBAR NOURI and AMY BROWNE met with the undercover agent in London, England.  They agreed to illegally send Bursa CE vaccine through other countries to Iran, without the required license.

5.      During their meetings in London, defendant AKBAR NOURI, defendant AMY BROWNE and the undercover agent agreed to formalize their illegal business relationship. Defendant NOURI presented a written agreement which, although never signed, stated that it was permissible for the undercover agent to pay a "kickback" to "his connection" at the Vineland, New Jersey supplier of the vaccine so that he did not ask too many questions about the end-destination of the vaccine.

6.      At defendant AKBAR NOURI's direction, defendant AMY BROWNE incorporated Eurovac as a business through which they could transact their illegal activities. Defendants NOURI and BROWNE directed the undercover agent and defendant BROWNE to set up a bank account for their business at First Union Bank in Yardley, Pennsylvania.

7.      In or about October 2000, while en route to Dubai, United Arab Emirates to meet with defendant AKBAR NOURI regarding Eurovac's vaccine business, defendant AMY BROWNE met with the undercover agent in Pennsylvania.  Defendant AMY BROWNE advised the undercover agent that in order to avoid detection, defendant NOURI "said that we need to stick with the plot that we don't know you (the undercover agent) and you need to stick with the plot that you don't know us."

8.      Thereafter, in order to further avoid detection, defendant AKBAR NOURI



attempted to avoid reference to Iran by referring to Iran as the "other country," my "origin country" and "this stupid country, I don't want to mention what."

### The May 2001 Attempted Export to Iran

9.      At the end of 2000 and the beginning of 2001, defendants AKBAR NOURI and AMY BROWNE made efforts to arrange for the shipment of Bursa CE vaccine from the United States through Switzerland and Dubai to Iran, and to obtain the appropriate letters of credit that would secure payment for the vaccine when it reached its destination Iran.

10.     On or about February 6, 2001, defendant AMY BROWNE called the undercover agent to advise him that defendant AKBAR NOURI was working to open letters of credit to Dubai and Iran. One letter of credit would ensure payment from the Iranian customer to a trading company in Dubai when the shipment made it from Dubai to Iran; the second letter of credit would ensure payment from the trading company in Dubai to defendant NOURI.

11.     In or about April 2001, defendant AKBAR NOURI caused a letter of credit to be opened for payment from the Iranian customer to the trading company in Dubai. The letter of credit, issued by an Iranian bank, reflected that the ultimate customer for 60,000 vials of Bursa CE vaccine was in Iran, that the vaccine would be transported to Tehran Mehrabad Airport in Iran, and that the seller and beneficiary of the letter of credit was Silver Island Trading Company in Dubai.

12.     On or abut April 26, 2001, defendant AKBAR NOURI faxed a copy of the letter of credit to the undercover agent.

13.     On or about April 27, 2001, defendant AMY BROWNE called the undercover agent to confirm that he had received the letter of credit.



14.    On or about April 30, 2001, defendant AKBAR NOURI called the undercover agent to discuss the letter of credit.

15.    In or about June 2001, defendant AKBAR NOURI caused a second letter of credit to be opened between Silver Island Trading Company in Dubai and Codesco, defendant NOURI's company in Switzerland, to ensure payment to defendant NOURI.

16.    In the meantime, on or about May 12, 2001, defendants AKBAR NOURI and AMY BROWNE caused the undercover agent to effect the export of 30,000 vials of Bursa CE vaccine from Philadelphia, Pennsylvania to Codesco in Switzerland with a Shipper's Export Declaration that falsely indicated that the country of ultimate destination was Switzerland, even though defendants NOURI and BROWNE knew that the vaccine was intended to be transhipped through Switzerland and Dubai to Iran without the required license from OFAC.

17.    In or about July 2001, after the second letter of credit was opened in June 2001 to the benefit Codesco, defendant AKBAR NOURI caused the vaccine to be shipped from Switzerland to Dubai.

18.    Thereafter, defendants AKBAR NOURI and AMY BROWNE often advised the undercover agent about the status of the intended shipment from Dubai to Iran, although that shipment never occurred.  On or about July 30, 2001, AMY BROWNE advised the undercover agent that defendant NOURI had sent a letter to his client in Iran complaining that the shipment had not been accepted into Iran from Dubai.

19.    Defendant AMY BROWNE later sent the undercover agent a copy of that letter.

20.    On or about October 3, 2001, defendant AMY BROWNE advised the undercover agent that she had just spoken to defendant AKBAR NOURI who said that "the Government of

7



Iran's Agriculture Department said fine, bring it in." But on or about November 27, 2001, defendant NOURI advised the undercover agent that "this stupid country, I don't want to mention what" would not permit the shipment in because the production date was too early.

### The March 2002 Export to Iran

21.    Despite these setbacks, defendants AKBAR NOURI and AMY BROWNE made efforts to send another shipment of vaccine from Philadelphia to Iran. This time, however, the defendants agreed to send it from Philadelphia to Switzerland, and then straight to Iran, thus avoiding Dubai.

22.    On or about December 19, 2001, defendant AKBAR NOURI obtained a letter of credit for payment from the Iranian customer to Codesco, for the shipment of 60,000 vials of Bursal CE vaccine to the Tehran Mehrabad Airport in Iran. He then faxed a copy to defendant AMY BROWNE, who, in turn, faxed it to the undercover agent.

23.    On or about January 18, 2002, in order to avoid detection, defendant AMY BROWNE discussed with the undercover agent the need to make sure that nobody knows about their involvement in this transaction with Iran.

24.    On or about March 2, 2002, defendants AKBAR NOURI and AMY BROWNE caused the undercover agent to effect the export of 60,000 vials of Bursa CE vaccine from Philadelphia, Pennsylvania to Codesco in Switzerland with a Shipper's Export Declaration that falsely indicated that the country of ultimate destination was Switzerland, even though defendants NOURI and BROWNE knew that the vaccine was intended to be transhipped to Iran without the required license from OFAC.

25.    On or about March 4, 2002, defendant AMY BROWNE told the undercover agent

8



that she had spoken to defendant AKBAR NOURI who advised that the shipment had arrived in Switzerland.

26.    On or about March 20, 2002, defendant AMY BROWNE informed the undercover agent that the vaccine had left Switzerland.

27.    On or about April 2, 2002, defendant AMY BROWNE advised the undercover agent that defendant AKBAR NOURI said that they would get paid soon.

28.    On or about May 8, 2002, defendant AKBAR NOURI caused approximately $164,380.20 to be wired from the Codesco bank account to the Eurovac bank account at First Union Bank in Yardley, Pennsylvania.

29.    On or about May 16, 2002, defendant AKBAR NOURI spoke to the undercover agent  by telephone and confirmed that the undercover agent had received the wire transfer.

30.    On or about July 17, 2002, defendant AMY BROWNE emailed the undercover agent to advise him that each was entitled to a commission of $14,020.00.

31.    On or about July 30, 2002, after the undercover agent sent Eurovac check number 1006 in the amount of $14,020.00 for to defendant AMY BROWNE for her countersignature, defendant AMY BROWNE signed the check and returned it to the undercover agent by U.S. mail.

All in violation of Title 18, United States Code, Section 371.

9

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 10 and 12 through 14 and Overt Acts 1 through 31 of Count One of this indictment are incorporated here.

2.      On or about May 12, 2001, in the Eastern District of Pennsylvania, and elsewhere, defendant

<strong>AKBAR NOURI</strong>

aided, abetted and willfully caused the willful attempt to export, sell and supply goods to a person in a third country with knowledge and reason to know that such goods were intended specifically for supply, transshipment and reexportation, directly and indirectly, to Iran and the Government of Iran, all without the required license from OFAC.

In violation of Title 50, United States Code, Section 1705(b), 31 C.F.R. Parts 560.204(a) and 560.530, and Title 18, United States Code, Section 2.




## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 10 and 12 through 14 and Overt Acts 1 through 31 of Count One of this indictment are incorporated here.

2.      On or about March 2, 2002, in the Eastern District of Pennsylvania, and elsewhere, defendant

### AKBAR NOURI

aided, abetted and willfully caused the willful exportation, sale and supply of goods to a person in a third country with knowledge and reason to know that such goods were intended specifically for supply, transshipment and reexportation, directly and indirectly, to Iran and the Government of Iran, all without the required license from OFAC.

In violation of Title 50, United States Code, Section 1705(b), 31 C.F.R. Parts 560.204(a) and 560.530, and Title 18, United States Code, Section 2.

11

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

        1.      Paragraphs 1 through 10 and 12 through 14 and Overt Acts 1 through 31 of Count One of this indictment are incorporated here.

        2.      On or about May 8, 2002, in the Eastern District of Pennsylvania and elsewhere, defendant

### AKBAR NOURI

knowingly conducted a financial transaction, that is, transported, transmitted and transferred funds to a place in the United States from a place outside the United States, by causing approximately $164,380.20 to be wired to the Eurovac bank account at First Union Bank, in Yardley, Pennsylvania from the Codesco bank account in Switzerland.

        3.      When conducting the financial transactions described in paragraph 2 above, defendant AKBAR NOURI knew that the property involved in that financial transaction represented the proceeds of some form of unlawful activity.

12

4.      The financial transactions described in paragraph 2 above involved the

proceeds of a specified unlawful activity, that is, the unlawful export and transshipment of goods

to Iran, in violation section 206 of the International Emergency Economic Powers Act, Title 50,

United States Code, Section 1705(b), and defendant AKBAR NOURI acted with the intent to

promote the carrying on of such specified unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

**A TRUE BILL:**



**GRAND JURY FOREPERSON**

First Assistant U.S. Attorney

**PATRICK L. MEEHAN**
**UNITED STATES ATTORNEY**

13

CLOSED

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CRIMINAL DOCKET FOR CASE #: 2:06-cr-00185-AB-2
### Internal Use Only

Case title: USA v. NOURI et al

Date Filed: 04/18/2006
Date Terminated: 07/19/2007

---

Assigned to: HONORABLE ANITA B. BRODY

**Defendant**

**AMY BROWNE** (2)
*TERMINATED: 07/19/2007*

represented by **DAVID M. KOZLOW**
FEDERAL DEFENDERS
SUITE 540 WEST
CURTIS CENTER
INDEPENDENCE SQUARE WEST
PHILADELPHIA, PA 19106
215-928-1100
Email: david_kozlow@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**LUIS A. ORTIZ**
DEFENDER ASSOCIATION OF PHILADELPHIA
SUITE 540 W, THE CURTIS CENTER

601 WALNUT STREET
PHILADELPHIA, PA 19106
215-928-1100
Email: luis_ortiz@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

A TRUE COPY CERTIFIED TO FROM THE RECORD
DATED : 11-5-07
ATTEST:
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**Pending Counts**

18:371 - CONSPIRACY TO DEFRAUD THE UNITED STATES (1)

**Disposition**

PROBATION 3 YEARS; SPECIAL ASSESSMENT $100.00.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                              **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                     **Disposition**

None

---

**Plaintiff**

**USA**                          represented by   **SALVATORE L. ASTOLFI**
                                                  U.S. ATTORNEY'S OFFICE
                                                  615 CHESTNUT STREET
                                                  SUITE 1250
                                                  PHILADELPHIA, PA 19106-4476
                                                  215-861-8431
                                                  Fax: 215-861-8498
                                                  Email: salvatore.astolfi@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/18/2006 | 1 | SEALED INDICTMENT as to AKBAR NOURI (1) count(s) 1, 2-3, 4, AMY BROWNE (2) count(s) 1. (cmc) (Entered: 04/18/2006) |
| 04/18/2006 | 3 | MOTION & ORDERTO SEAL INDICTMENT AS TO AKBAR NOURI, AMY BROWNE UNTIL NOTIFIED BY THE AUSA, ETC. Signed by Judge JACOB P. HART on 4/18/06.4/18/06 Entered. (cmcsl) (Entered: 04/18/2006) |
| 12/28/2006 | 4 | Letter from AUSA Unsealing Indictment as to AKBAR NOURI, AMY BROWNE.(cmcsl) (Entered: 12/28/2006) |
| 12/28/2006 |  | INDICTMENT UNSEALED as to AKBAR NOURI, AMY BROWNE . (cmcsl) (Entered: 12/28/2006) |
| 01/09/2007 | 5 | NOTICE OF HEARING as to AMY BROWNE Arraignment and Guilty Plea set for 2/28/2007 03:00 PM in COURTROOM 13-A before HONORABLE MARY A. MCLAUGHLIN. (dh, ) (Entered: 01/09/2007) |
| 01/10/2007 | 6 | NOTICE OF ATTORNEY APPEARANCE DAVID M. KOZLOW appearing for AMY BROWNE *Certificate of Service* (KOZLOW, DAVID) (Entered: 01/10/2007) |
| 01/29/2007 | 14 | ORDER REASSIGNING CASE. CASE REASSIGNED TO JUDGE ANITA B. BRODY AS TO AKBAR NOURI, AMY BROWNE FOR |

| | | |
|---|---|---|
| | | ALL FURTHER PROCEEDINGS. JUDGE MARY A. MCLAUGHLIN NO LONGER ASSIGNED TO CASE. . Signed by Judge HARVEY BARTLE III on 1/29/07.1/30/07 Entered and Copies E-Mailed. (jh, ) (Entered: 01/30/2007) |
| 02/06/2007 | 🌐15 | NOTICE OF HEARING as to AMY BROWNE Plea-Arraignment Hearing set for 3/1/2007 03:00 PM in COURTROOM 7-B before HONORABLE ANITA B. BRODY. (js, ) (Entered: 02/06/2007) |
| 03/05/2007 | 🌐19 | NOTICE OF HEARING as to AMY BROWNE Sentencing set for 6/7/2007 04:00 PM in COURTROOM 7-B before HONORABLE ANITA B. BRODY. (js, ) (Entered: 03/05/2007) |
| 03/06/2007 | 🌐20 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER AS TO AMY BROWNE.. Signed by Judge LEGROME D. DAVIS on 3/5/07.3/7/07 Entered and Copies Mailed, E-Mailed by Chambers. (jh, ) (Entered: 03/07/2007) |
| 03/06/2007 | 🌐21 | Minute Entry for proceedings held before Judge ANITA B. BRODY held on 3/1/07. (SEALED AND IMPOUNDED)(jh, ) (Entered: 03/07/2007) |
| 03/06/2007 | 🌐 | (Court only) Document sealed as to AMY BROWNE. (jh, ) (Entered: 03/07/2007) |
| 03/06/2007 | 🌐 | (Court only) ***Location start as to AMY BROWNE. (jh, ) (Entered: 03/07/2007) |
| 03/06/2007 | 🌐22 | (Court only) Document sealed as to AMY BROWNE. (jh, ) (Entered: 03/07/2007) |
| 03/06/2007 | 🌐23 | (Court only) Document sealed as to AMY BROWNE. (jh, ) (Entered: 03/07/2007) |
| 03/12/2007 | 🌐25 | (Court only) Document sealed as to AMY BROWNE. (jh, ) (Entered: 03/13/2007) |
| 03/12/2007 | 🌐26 | (Court only) Document sealed as to AMY BROWNE. (jh, ) (Entered: 03/13/2007) |
| 03/12/2007 | 🌐27 | (Court only) Document sealed as to AMY BROWNE. (jh, ) (Entered: 03/13/2007) |
| 03/30/2007 | 🌐30 | NOTICE OF ATTORNEY APPEARANCE LUIS A. ORTIZ appearing for AMY BROWNE Certificate of Service (ORTIZ, LUIS) (Entered: 03/30/2007) |
| 06/08/2007 | 🌐38 | Minute Entryfor proceedings held before Judge EDUARDO C. ROBRENO Sentencing held on 6/7/07 for AMY BROWNE.HONORABLE EDUARDO C. ROBRENO presided in his emergency Judge capacity for the HONORABLE ANITA B. BRODY at this proceeding. Court GRANTS Deft's. oral request to have sentencing continued.Court Reporter ESR.(ke) (Entered: 06/11/2007) |
| 06/13/2007 | 🌐39 | NOTICE OF HEARING as to AMY BROWNE Sentencing set for 7/18/2007 09:30 AM in COURTROOM 7-B before HONORABLE |

| | | ANITA B. BRODY. (js, ) (Entered: 06/13/2007) |
|---|---|---|
| 07/17/2007 | ●40 | NOTICE OF HEARING as to AMY BROWNE Sentencing set for 7/18/2007 09:00 AM in COURTROOM 7-B before HONORABLE ANITA B. BRODY. (js, ) (Entered: 07/17/2007) |
| 07/18/2007 | ●41 | Minute Entry for proceedings held before Judge ANITA B. BRODY Sentencing held on 7/18/07, for AMY BROWNE (2), Count(s) 1, PROBATION 3 YEARS WITH SUPERVISION TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA; SPECIAL ASSESSMENT $100.00.Court Reporter ESR.(jh, ) (Entered: 07/18/2007) |
| 07/19/2007 | ●42 | SENTENCING MEMORANDUM BY AMY BROWNE. (jh, ) (Entered: 07/19/2007) |
| 07/19/2007 | ●43 | MOTION FOR DOWNWARD DEPARTURE FROM GUIDELINE SENTENCING RANGE BY USA AS TO AMY BROWNE. (jh, ) (Entered: 07/19/2007) |
| 07/19/2007 | ●44 | ORDER GRANTING 43 GOVT'S MOTION TO DEPART AS TO AMY BROWNE (2).. Signed by Judge ANITA B. BRODY on 7/18/07.7/19/07 ENTERED AND COPIES MAILED, E-MAILED BY CHAMBERS. (jh, ) (Entered: 07/19/2007) |
| 07/19/2007 | ●45 | JUDGMENT AS TO AMY BROWNE (2), Count(s) 1, PROBATION 3 YEARS; SPECIAL ASSESSMENT $100.00.. Signed by Judge ANITA B. BRODY on 7/18/07.7/19/07 Entered. (jh, ) (Entered: 07/19/2007) |
| 07/19/2007 | ● | (Court only) ***Case Terminated as to AKBAR NOURI, AMY BROWNE. (jh, ) (Entered: 07/19/2007) |
| 11/05/2007 | ●46 | Probation Jurisdiction Transferred to Northern District of California as to AMY BROWNE Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (jh, ) (Entered: 11/05/2007) |